**KLESTADT & WINTERS, LLP**
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Maeghan J. McLoughlin

*Proposed Counsel to Debtor Lehr Consultants
   International, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

| | |
|---|---|
| In re | : |
| | :    Chapter 11 |
| LEHR CONSULTANTS INTERNATIONAL, LLC, | : |
| | :    Case No. 13-13651 |
| Debtor. | : |

------------------------------------------------------------------x

**AFFIDAVIT OF VALENTINE A. LEHR PURSUANT TO
S.D.N.Y. LOCAL BANKRUPTCY RULES 1007-2 AND 9077**

STATE OF NEW YORK    )
                     )    SS:
COUNTY OF NEW YORK   )

Valentine A. Lehr, being duly sworn, says:

1. I am the Managing Member of Lehr Consultants International, LLC ("LCI") the above-captioned debtor and debtor in possession (the "Debtor"). In accordance with S.D.N.Y. Local Bankruptcy Rules ("L.B.R.") 1007-2 and 9077-1, I submit this affidavit ("Affidavit") in connection with the order for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed by the Debtor in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), on November 7, 2013 (the "Petition Date"), and in support of the Debtor's other pleadings.

2. I am generally familiar with the business and financial condition of the Debtor.

Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

## A. *Required Contents of Affidavit*

### a. *Nature of the Debtor's Business*

3. LCI evolved from a firm formed in 1969 founded by myself. LCI was formally incorporated in the State of New York in 2005 and is considered a prominent figure in the construction and engineering consulting field.

4. LCI offers both traditional and innovative consulting services worldwide in the design and engineering of commercial and residential construction projects. LCI utilizes state-of-the-art technology and proprietary systems to challenge the standard approach to electro-mechanical engineering and provide clients cutting edge and cost effective solutions to their unique needs. LCI's forte is providing environmentally responsive and sustainable architectural and engineering designs in fulfilling their clients' objectives and completing projects in a timely manner.

5. LCI has completed a diverse range of projects and specializes in hotel and resort properties, theaters, museum and landmark properties, educational centers, commercial and residential properties, and hospitals and healthcare facilities. For example, LCI has provided consulting services in the construction of Harrods Store in London, Atlantis Paradise Islands in the Bahamas, the Waldorf Astoria in New York, and Taipei 101, formerly the world's tallest building. LCI has also contributed to the design and completion of projects domestically and internationally in Egypt, Indonesia, British West Indies, Dubai, Russia, Pakistan, China, Uruguay, Australia, New York, New Jersey, Connecticut, Florida, and Texas, among others.

6. LCI has been engaged to deliver the complete mechanical and engineering design

2

for projects, to assist with infrastructure and utility overhauls and upgrades, and to offer unique and budget-conscious architectural solutions to client's desires. LCI's long history of successfully completing many of the world's largest construction projects has been recognized and praised by various engineering associations in the United States and internationally.

7. LCI's annual revenues steadily grew to more than $10,000,000 in 2011. At its peak, LCI employed more than 100 engineers and support staff and has continuously operated from offices near Penn Station New York.

  b. *Current Status of LCI*

8. As of October 15, 2013, LCI employed approximately 9 employees.

9. LCI has approximately $1,600,000 in work in progress and Accounts Receivable of more than $1,000,000.

  c. *Circumstances Leading to Debtor's Bankruptcy Filing*

10. In August 2013 management at LCI discovered that the bookkeeper, Felicitas Esmilla had been embezzling from the firm's accounts. The extent of the damage is still unknown but it is believed that not less than $2,000,000 was stolen over a period of several years, and possibly over the last decade. LCI has confirmed that Esmilla (and possibly others) was, at a minimum, falsifying financial statements, fraudulently entering herself multiple times on the company payroll, issuing employee checks in inflated amounts, and diverting 401(k) contributions to herself. Given Esmilla's role as the sole bookkeeper, LCI's books and records are not reliable and the Debtor needs time to reconstruct them to provide an accurate portrayal of the current financial status.

11. In addition, on October 7, 2013, a warrant of seizure of records and computers was signed by Justice of the Supreme Court, Hon. Anthony J. Ferrara. It was executed by the

New York Police Department on October 16, 2013, and resulted in the seizure of LCI's computers containing LCI's books and records to pursue its criminal investigation against Esmilla. Without its books and records, the Debtor is unable at this time to provide accurate amounts of payments made and received preceding the bankruptcy filing.

12. In addition to the damage to LCI's business from the embezzlement and theft of at least $2 million in funds, the 2008 collapse of the real estate and financial markets and tightening of credit markets had a significant negative impact on the entire construction industry. Overall construction spending in New York City was $23.7 billion in 2010, down nearly twenty-three (23%) percent from its peak in 2007 and 2008. Many commercial and residential projects were delayed, put on hold, or cancelled, which directly impacted LCI consulting services for the design of such projects. International projects, including the world's tallest tower in Dubai, an LCI project, were put on indefinite hold and has not yet restarted.

13. LCI has continued to reduce its workforce and overhead by shrinking office space to reduce rental payments, but has had difficulty staying competitive given the combination of the fraud and the market downturn.

14. In light of this backdrop, the Debtor has struggled to stay current on its obligations with payroll, employee benefits, rental payments, and its accounts payable. The loss of business following the recession coupled with the discovery that its trusted bookkeeper had been looting the firm has left the Debtor with no choice but to seek the protections afforded by the Bankruptcy Code so that it may reorganize its affairs while continuing to operate.

    d. *Debtor's Postpetition Goals*

15. The Debtor believes that through chapter 11, it can restructure its business into a leaner, more efficient operation that can return to profitability. With the discharge of three

4

employees for dishonesty and an influx of new international projects, during the pendency of the chapter 11 case, the Debtor intends to rebuild its book of business. Debtor will also continue to complete projects currently under contract worth over $1.5 million. The Debtor reasonably anticipates to making significant returns to its Creditors.

16. The Debtor believes that the chapter 11 process affords a better opportunity to provide a greater return to its creditors than any alternative wind down or liquidation process. Incomplete design projects have little value to owners who will likely reserve funds to pay other professionals to complete the work.

　　　　e. *Debtor's Case Was Not Originally Commenced Under Chapter 7 or Chapter 13*

17. The Debtor's case was voluntarily commenced under chapter 11 and was not originally commenced under chapter 7 or chapter 13.

　　　　f. *Prepetition Creditors' Committee*

18. To the best of the Debtor's knowledge, no prepetition creditors' committee was formed prior to the Petition Date.

　　　　g. *Twenty Largest Unsecured Claims*

19. A consolidated list setting forth the Debtor's twenty (20) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31), are annexed hereto as **Exhibit A**. As required by L.B.R. 1007-2(a)(4), **Exhibit A** includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured.

　　　　h. *Five Largest Secured Creditors*

20. As required by L.B.R. 1007-2(a)(5), LCI has no secured creditors. Accordingly,

L.B.R. 1007-2(a)(5) is inapplicable.

   i. *Summary of the Debtor's Assets and Liabilities*

21. As required by L.B.R. 1007-2(a)(6), a summary of the Debtor's assets and liabilities is attached as **Exhibit B**.

   j. *Publicly Held Stock*

22. As required by L.B.R. 1007-2(a)(7), no classes of shares of stock, debentures, or other securities of the debtor are publicly held. The Debtor's outstanding stock is owned 100% by Valentine A. Lehr.

   k. *Debtor's Property Held By Others*

23. Other than as set forth herein, the Debtor has no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity. Accordingly, L.B.R. 1007-2(a)(7) is inapplicable.

   l. *Debtor's Office Space*

24. As required by L.R.R. 1007-2(a)(9), LCI leases its primary office located at 134 West 29th Street, 11th Floor, New York, NY 10001.

   m. *Location of the Debtor's Assets and Books and Records*

25. Pursuant to L.B.R. 1007-2(a)(10), the majority of the Debtor's books and records are maintained at their offices located at 134 West 29th Street, 11th Floor, New York, NY 10001. Substantially all of the Debtor's physical assets are located on the leased premises located at 134 West 29th Street, 11th Floor, New York, NY 10001.

   n. *Threatened or Pending Actions*

26. Pursuant to L.B.R. 1007-2(a)(11), a list of pending or threatened actions is annexed hereto as **Exhibit C.**

  *o. Senior Management*

27. Pursuant to L.R.R. 1007-2(a)(12), LCI's senior management consists of:

  a) Valentine Lehr, Managing Member

  b) Michael Lehr, Operations Manager

**B. Additional Information Required by L.B.R. 1007-2(b)**

28. In accordance with L.B.R. 1007-2(b), the Debtor intends to continue the operation of its business and the management of its property as a debtor and a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

29. In accordance with L.B.R. 1007-2(b)(1), the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders, and partners) for the thirty (30) day period following the Petition Date is $85,000.

30. In accordance with L.B.R. 1007-2(b)(2), the amounts paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by the Debtor's officers is $10,000.

31. The Debtor does not anticipate retaining a financial or business consultant, therefore L.B.R. 1007-2(b)(2)(C) is not applicable.

**32.** In accordance with L.B.R. 1007-2(b)(3), a schedule of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid is annexed hereto as **Exhibit D.**

### C. <u>Conclusion</u>

33.     The Debtor reserves the right to amend or supplement any of the attached schedules in the event additional information is obtained by the Debtor.

34.     The Debtor believes that the protection of the Bankruptcy Court will enable it to maximize the value of their assets for the benefit of its estates and its creditors.

*/s/ Valentine A. Lehr*
Valentine A. Lehr

Sworn to before me this
7th day of November, 2013

*/s/ Maeghan Joan McLoughlin*
Notary Public, State of New York